959 F.2d 231
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE,
INCORPORATED; William S. Fails, Reverend; Alfred
Harvey; Harry James, Jr.; Walter
Marshall, Plaintiffs-Appellants,
v.
WINSTON-SALEM/FORSYTH COUNTY BOARD OF EDUCATION, Its
Successors and Agents; Forsyth County Board of
Elections, Defendants-Appellees.
 No. 91-1222.
 United States Court of Appeals, Fourth Circuit.
 Argued March 5, 1992.
Decided April 3, 1992.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Norwood Carlton Tilley, Jr., District Judge. (CA-91-126)
 Argued: Romallus Olga Murphy, Sr., Greensboro, N.C., for appellants; Robert Scott Pierce, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C., for appellees.
 On Brief: David M. Dansby, Jr., Greensboro, N.C., Dennis Hayes, General Counsel, Willie Abrams, Assistant General Counsel, NAACP Special Contribution Fund, Baltimore, Md., for appellants; Allan R. Gitter, Tyrus V. Dahl, Jr., Womble, Carlyle, Sandridge & Rice, Douglas S. Punger, Winston-Salem/Forsyth County Board of Education, Winston-Salem, N.C., for appellees.
 M.D.N.C.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and NORMAN PARK RAMSEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiffs, four black registered voters of Forsyth County, North Carolina, and the Winston-Salem Branch of the National Association for the Advancement of Colored People ("NAACP"), brought a suit against the Winston-Salem/Forsyth County Board of Education (the "Board of Education" or the "Board") and the Forsyth County Board of Elections (the "Board of Elections"), claiming that the procedure for electing at-large members to the nine-member Board of Education with staggered terms violated plaintiffs' rights under Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1971 and 1973, and the Fourteenth and Fifteenth Amendments to the United States Constitution, by diluting minority voting strength and discriminating against black citizens exercising their right to vote. Defendants denied the allegations and asserted affirmative defenses. Defendants also filed a motion for judgment on the pleadings, on the ground that neither defendant was a proper party to the action because only the State of North Carolina, by action of the General Assembly, could change the election procedure at issue. Before a decision was rendered on that motion, the lawsuit was mooted by the General Assembly's passage of House Bill 776 on July 15, 1991, which changed the procedure such that some of the members are to be elected by district and all are to be elected simultaneously.
 
 
 2
 Plaintiffs filed a motion to dismiss their action without prejudice and for a determination of plaintiffs as prevailing parties. The district court granted the motion to dismiss, but with prejudice, and denied plaintiffs' motion to be named the prevailing parties. Plaintiffs assert on appeal that the district court erred in denying their motion to be named prevailing parties. We now affirm.
 
 
 3
 In January, 1990, the Winston-Salem Branch of the NAACP and other citizens and groups began requesting the Board of Education to adopt a district system of electing its members or some other system which did not dilute the vote of the black citizens of Forsyth County. Between January, 1990 and January, 1991, the Board consistently tabled motions to increase the voice of black citizens in governance of the schools. A Research Committee appointed to study the elections recommended that the Board abandon the at-large method of electing members.
 
 
 4
 Plaintiffs filed their complaint in the district court for the Middle District of North Carolina on March 14, 1991. The Board then voted again to maintain the status quo with no proposed change. A month after the complaint was filed, two legislators from Forsyth County introduced House Bill 776, which provided for election by districts.
 
 
 5
 The parties to the instant action then engaged in discussions of various proposals for settlement of the lawsuit. The defendants presented proposals which were rejected by the plaintiffs, namely, (1) a 2-5-2 plan, with a two-member majority black district, a five-member majority white district and two members at-large, and (2) a 2-7 plan, with a two-member majority black district and a seven-member majority white district. Plaintiffs' proposals to defendants were also rejected. Plaintiffs proposed (1) a 6-3 plan, with six members elected by districts and three members elected at-large, and (2) a 7-2 plan, with seven members elected by districts and two elected at-large. Plaintiffs, subsequently, proposed a compromise plan which was a modification of their 6-3 plan, namely, a 2-4-3 plan: a two-member majority black district, a four-member majority white district, and three members elected at-large. Plaintiffs' compromise proposal was rejected by the defendant Board of Education.
 
 
 6
 The Board then proposed a 2-7 plan to the Legislative Committee on Redistricting, but also argued that the status quo should be maintained. In the final two weeks of the legislative session, in July, 1991, the defendants retreated from support of a 2-7 plan or the status quo and urged that the legislators adopt the 2-4-3 plan which had previously been proposed by plaintiffs. House Bill 776, which had called for a 6 district, 3 at-large plan, was amended in the Senate as a compromise and accepted in the House with modifications calling for a 2-4-3 plan. Following passage of House Bill 776, defendants refused to sign a consent judgment in settlement, but proposed instead that plaintiffs should file for dismissal with prejudice.
 
 
 7
 The district court, in denying plaintiffs' motion to be declared the prevailing parties, stated in its memorandum opinion of September 9, 1991, that plaintiffs could not be deemed "prevailing parties" because the defendants had "not acted to end the lawsuit and give Plaintiffs relief; on the contrary, Defendants have opposed Plaintiffs' claim by denying the essential allegations, asserting affirmative defenses, and filing a motion to dismiss." The court further stated:
 
 
 8
 Plaintiffs did not name the State of North Carolina a defendant to this action and never moved to amend the complaint to do so. Plaintiffs offer no authority holding that a plaintiff may nevertheless "prevail" against a party when a non-party acts to moot the controversy. Therefore, Plaintiffs' motion to be declared prevailing parties and for an award of costs and attorney fees will be denied.
 
 
 9
 It may well be that if a cause of the legislature's actions had been linked to actions of the plaintiffs, the non-party status of the legislature would not necessarily have operated as a bar to an award of counsel fees against the Board of Education. See Bonnes v. Long, 599 F.2d 1316, 1319 (4th Cir.1979). But the record shows no actions attributable to the plaintiffs which caused the legislature to take the steps that it did. E.g., Metropolitan Pittsburgh Crusade for Voters v. Pittsburgh, Pa., 727 F.Supp. 969, 973 (W.D.Pa.1989). In the absence of evidence of a catalytic action by plaintiffs bringing House Bill 776 into being, there is at most unverified suspicion, but no evidence, that the plaintiffs "contributed in a significant way" and thus were prevailing parties. Bonnes, 599 F.2d at 1319.
 
 
 10
 With that consideration in mind, the district judge's holding, while it might not apply to a different set of facts, was accurate as applied here.
 
 The judgment is
 
 11
 AFFIRMED.